CATHARINE SIMMONS et al.

*v.*

THE CITY OF PATERSON.

[Decided April 30th, 1915.]

In a suit for ascertaining damages sustained by owners of riparian lands, evidence *Held* to show that the owners of a certain property are not entitled to compensation, as riparian owners, when, in a conveyance thereof, the premises are described as lying on the Passaic river "which is overflowed by the raising of the mill dam of the said company (*i. e.*, the Dundee Manufacturing Company), and which contains three-quarters of an acre by the same more or less."

*Mr. Chauncey G. Parker,* for the complainants.

*Mr. Edward F. Merrey,* for the defendant.

STEVENS, V. C.

My attention has been called to evidence of Mr. Harder in reference to the Hinchliffe title which I did not consider in writing my opinion in this case, which is reported *ante p. 11.*

John and Janet Bain, in May, 1837, conveyed to the Dundee Manufacturing Company all that part of her lot lying on the Passaic river "which is overflowed by the raising of the mill dam of the said company and which contains about three-quarters of an acre be the same more or less." I was under the impression that this conveyance was indicated on the map by the quadrangular piece adjoining the shore line. In this I was mistaken. The land in the vicinity of the stream is low. There are no rocky or abrupt slopes. When the water was raised by the dam, it necessarily covered more or less of the upland on the entire frontage and interposed a strip of varying width between the old river bed and the new shore line. The interposition of this strip, under the cases of *Stevens* v. *Paterson and Newark Railroad, 34*

*N. J. Law 532,* and *Simmons* v. *Paterson, 60 N. J. Eq. 385,* deprived the upland, unconveyed by the grantor, of its riparian character. When, in 1839, Janet Bain conveyed the upland to Simmons, she conveyed a non-riparian tract whose character and extent remained unchanged up to 1858, when the Dundee company again raised its dam and overflowed more land. The contention is that inasmuch as a new shore line was then formed, and inasmuch as the water has, for over fifty years, continued to flow over a new bed, and inasmuch as this new bed belonged to the owner of the upland, the upland, as it now is, has again acquired a riparian character entitling the grantees of Simmons to participate in the assessment of damages.

If my opinion, in *Doremus* v. *Paterson, 63 N. J. Eq. 606,* had been affirmed *in toto.* the Hinchliffes, who are the present owners, would have had a stronger case. The upland is *apparently* riparian; the deeds to the Barneys, who were Simmons's immediate grantees, as I stated in the opinion already filed, by construction, included the then bed of the lake (if a lake), as far as the Simmons title went, and the injury suffered was and is identical with that suffered by the other riparian owners. But the court of errors and appeals did not concur in my view of the rights of certain of the property owners. *65 N. J. Eq. 711.*

The bill in that case was filed by three classes of persons— *"first,* by those who were, in the fullest sense, riparian owners, above the ebb and flow of the tide." To these, the court of errors and appeals gave relief; *"second,* by those whose lands adjoined, not the river, but the artificially-constructed canal which derives its waters from the river;" *"third,* by those who were neither owners nor lessees of land fronting on the river or on the canal, but lessees of a certain amount of 'mill power' used in their respective factories for driving machinery," &c. *Doremus* v. *Paterson, 63 N. J. Eq.* (on *p. 607*). Following, as I thought, the case of *Butler Rubber Co.* v. *Newark, 61 N. J. Law 32,* I held that both of these classes were, as far as they were injuriously affected by the pollution, entitled to compensation; that if, as against Newark, the Butler company could demand damages for the partial taking of its mill power, the lessees of such power and, *a fortiori,* the owners of land along the line of the new

waterway, could, as against Paterson, lawfully claim damages for the pollution of the water to their injury; a pollution depriving them of some of its uses as effectually as if there had been partial abstraction.

The court of errors and appeals, basing itself on the decision of the *Stockport Water Works Case, 3 H. & C. 300,* held that where a riparian owner conveys land not abutting on a stream and grants water rights to be used thereon, the grantee of these rights (though the grant be valid as against the grantor) cannot sue an upper riparian owner for polluting the water to his injury. The English courts have refused to extend the doctrine of the *Stockport Case* to the case of an owner whose lands border on an artificial waterway, deriving its waters from a natural stream. In *Nuttall* v. *Bracewell, L. R., 2 Exch. 1,* Channell, B., says: "If a riparian proprietor grants to someone, not such a proprietor, a right to abstract water from the stream, as in the *Stockport Water Works Case,* I think the grantee can sue only the grantor for any interference with him. If, however, two adjoining riparian proprietors agree to divert the stream, so that it shall run in two channels instead of one, the water passing again into the old stream below their land, and flowing down to the lower proprietors as before, the case is, I think, different. *What is done is apparent to all* and any use that may be made of the new stream, as to turn a mill, for instance, is as apparent as if the mill were upon the old stream. * * * This distinction is alluded to in the judgment of the majority in *Stockport Water Works Co.* v. *Potter,* where it is said, 'the case where a riparian proprietor makes two streams instead of one and grants land on the new stream, seems analogous to a grant of a portion of the river bank, but not analogous to a grant of a portion of the riparian estate not abutting on the river.' In the case of a grant of land on a new stream, the grantee obtains a right of access to the river, and it is by virtue of that right of access that he obtains his water rights. * * * I see no reason why the law applicable to ordinary running streams should not be applicable to such a stream as this, *for it is a natural stream or flow of water, though flowing in an artificial channel.*" This case has been ap-

proved and followed in subsequent cases. *Holker* v. *Porritt, L. R., 8 Exch. 107; on appeal, 10 Exch. 59; Baily & Co.* v. *Clark (1902), 1 Ch. 649.* It was an authority for giving compensation to landowners whose lands adjoined the canal, but the court of errors and appeals did not follow it.

The matter stands thus: The canal had· existed as a permanent structure from the year 1832—that is, for over eighty years. During all that time part of the water of the Passaic has flowed over its bed and has been returned to the river lower down. This did not, in the estimation of the appellate court, make it part of the stream and did not give to those whose lands bordered upon it any title to compensation.

In the case in hand, the old bed of the stream was separated from the upland by the Bain deed. The upland was plainly non-riparian from 1837 to 1858. Then the dam was raised again and more of the upland submerged. It is argued that the land thus submerged having become part of the bed of the stream, and the title to it and to the upland having resided in the same person, the upland has again become riparian. But the submerged portion is a bed just as artificial as that of the canal, with this difference: the water has flowed over the canal bed for eighty years and over the submerged land for less than sixty. If the owner of land along the canal is not entitled to damages, I cannot see how the Hinchliffes can be.

But the case in hand has in it an element of weakness that did not exist in the case of the canal owners. Their land not only touched the water, but they had, as against their grantor, by express grant, a right to utilize the flow. The Hinchliffes have no such right; not only have they no right as against the riparian owner higher up, but they have no right as against the Dundee company. On April 4th, 1860, Simmons, through whom they derived title, made a deed to that company giving them

"the right and privilege of overflowing without molestation forever all such and so much of the farm lands and premises of the said James Simmons * * * in, adjacent and near the Passaic river (including the *locus in quo*) * * * as shall or may at any time be overflowed or caused to be overflowed with water or otherwise injured by means of the erection of the dam and works," &c.

Neither by this deed nor otherwise has the Dundee company given either Simmons or his grantees any correlative right to the flow of the stream.

In *Belknap* v. *Trimble, 3 Paige 577*, Chancellor Walworth says: "The learned commentator on American law lays it down as the established doctrine both here and in England that the exclusive enjoyment of water in a particular way for twenty years without interruption becomes an adverse enjoyment sufficient to raise a presumption of title as against a right in any other person which might have been but was not asserted. * * * I apprehend also that this rule must be reciprocal and that a proprietor at the head of a stream, who has changed the natural flow of the waters and has continued such change for more than twenty years, cannot afterwards be permitted to restore it to its natural state when it will have the effect to destroy the mills of other proprietors below, which have been erected in reference to such change in the natural flow of the stream."

If, on this principle, the Dundee company had, *without permission,* continued to overflow the Simmons land for twenty years, it would have acquired the right to do so, and it may well be that Simmons might, as against it, have acquired the reciprocal right of enjoying and utilizing this flow, if he had notoriously incurred expense in so doing, on the assumption that it would continue. But the company's right does not depend upon adverse user. It is defined by deed. The deed confers upon the company a privilege of overflow, to be exercised at its option. What is the apparent bed of the so-called lake to-day may be upland to-morrow. The lowering or raising of the water at its discretion was the very thing the company contracted for. There being no right as against the company, how is it possible to raise a right as against Paterson?

I am, therefore, obliged to conclude that the Hinchliffes are not entitled to compensation.